**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CHARLES MESIROW, an individual,<br><br>        Plaintiff,<br><br>    vs.<br><br>LEISERV, INC. dba VIA LINDA LANES, an Illinois corporation,<br><br>        Defendant. | No. CIV 04-2052 PHX RCB<br><br>O R D E R |

    Plaintiff Charles Mesirow brought this personal injury action, which was removed to this Court from the Superior Court of Arizona for Maricopa County by Defendant Leiserv Inc. ("Leiserv") (doc. # 1). A trial before this Court is scheduled to begin on December 6, 2005. Currently pending before the Court are Leiserv's motions <u>in limine</u> to exclude unrelated prior incidents (doc. # 50); to exclude an allegedly outdated study and related information (doc. # 51); and to limit Plaintiff's evidence of medical expenses to amounts actually accepted as payment in full for the services rendered by medical providers (doc. # 52). Plaintiff opposes only the latter

1 two of these motions.  Response (doc. # 53).

2 **I.    BACKGROUND**

3   Mesirow was bowling at Via Linda Lanes on November 29, 2002
4 when, in his approach to release the bowling ball, he apparently
5 slipped on a translucent substance and fell, landing on his left
6 knee and head.  Compl. (doc. # 1) ¶¶ 8-10.

7   In the mid to late 1970's, Brunswick Corporation published a
8 Safety Manual that referred to Brunswick Recreation Centers' Study
9 of Accident Claims (collectively, the "BRC Study" or "Study").
10 Mot. (doc. # 51), Ex. 2 ¶¶ 2-3.  According to the Study, twenty-
11 nine percent of customer-related claimed accidents were
12 attributable to slips, trips, and falls in approach areas.  Id.,
13 Ex. 1.

14   Between November 29, 2002 and October 18, 2004, Mesirow sought
15 and obtained treatment for the injuries sustained in his fall.
16 Mot. (doc. # 52), Ex. 1.  While the amounts billed for many of the
17 services have been fully paid by either Mesirow or his insurer,
18 some balances have apparently been written-off or otherwise
19 discounted as a result of his insurer's negotiations with
20 providers.  See Response (doc. # 53) at 7; Mot. (doc. # 52), Ex. 1.

21   The present motions in limine concern whether evidence of
22 certain unrelated prior incidents should be admitted at trial (doc.
23 # 50); whether the BRC Study should be admitted at trial (doc. #
24 51); and whether Plaintiff's evidence of medical expenses should be
25 limited only to the amounts actually paid by him or his insurer, to
26 the exclusion of any discounts given by providers (doc. # 52).
27 . . .
28

-2-

**II. DISCUSSION**

   **A. Evidence of Unrelated Prior Incidents**

   Leiserv contends that certain prior incidents are not relevant to the instant dispute, or are not substantially similar to Plaintiff's claimed accident, and should therefore be excluded at trial.  Mot. (doc. # 50).  Plaintiff does not oppose this motion, agreeing not to introduce evidence of these incidents, but reserving the right to do so "in the event defendant opens the door to their admissibility."  Response (doc. # 53).  Therefore, Leiserv's motion in limine to exclude unrelated prior incidents (doc. # 50) is granted, subject to reconsideration should Plaintiff contend at trial that Defendant has opened the door to their admissibility.

   **B. The BRC Study**

   Leiserv argues that the BRC Study should be excluded, because (1) its age renders it irrelevant to the pending dispute; (2) its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury; and (3) the Study summarizes inadmissible hearsay statements made by injured parties in incident reports.

   **1. Relevance**

   Relevant evidence is presumptively admissible.  Fed. R. Evid. 402.  It is defined as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.

   Plaintiff maintains that the Study is relevant to the standard of care owed by Leiserv, as well as Leiserv's notice of the

possibility of injury in the approach area.  Response (doc. # 53) at 1-2.  Leiserv contends that the Study is irrelevant on account of its age, and because Plaintiff does not claim to have fallen due to a worn approach floor or inadequate approach finish as discussed in the Study.  Mot. (doc. # 51) at 2.  Neither argument dispels the probative value of the Study to the facts in this case.  Plaintiff claims to have slipped on a translucent substance in the approach area and fallen.  The Study is relevant, because it notes the frequency of falls in the approach area, as well as the effect of approach finish on desired characteristics.  Id., Ex. 1.  The age of the study does not negate its probative value, but goes to the weight of the evidence.  Furthermore, the Study's discussion of approach finish does not establish that a worn or inadequate approach finish is the only possible cause of a bowler's fall in the approach area as Leiserv suggests.  See id.  Therefore, the study is relevant.

**2. Unfair Prejudice**

Although relevant, the BRC Study, or portions of it, may be excluded at trial "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Fed. R. Evid. 403.

The Court does not agree with Leiserv's characterization of the Study as being so "cloaked in the mantle of science" as to be misleading or confusing to the jury.  See Mot. (doc. # 51) at 3.  The mere fact that percentages are used in reporting the frequency with which accidents have occurred in different areas of the Brunswick bowling centers should not by so mystifying that the jury would give undue credence to a nonexistent scientific underpinning.

However, the Court is sympathetic to Leiserv's concern about the age of the Study. In particular, the Court finds that the danger of unfair prejudice substantially outweighs the probative value of the following portions of the Study: (1) the second sentence of the first paragraph of the Study's first page, beginning with the phrase "Center personnel should become familiar"; (2) the second sentence of the first paragraph of the Study's second page, beginning with the phrase "In some cases"; and (3) the entire final paragraph of the Study's second page, beginning with the phrase "There are many external sources." Accordingly, these portions of the Study will be excluded under Rule 403.

As to the remainder, the Court cannot conclude that the Study's probative value to the issues raised by Plaintiff is so minimal, on account of its age, as to be <u>substantially</u> outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Any flaw deriving from the age of the Study as to the remaining portions is more appropriately addressed in the form of a limiting instruction. <u>Cf.</u> <u>Hemmings v. Tidyman's Inc.</u>, 285 F.3d 1174, 1188 (9th Cir. 2002) (stating that the inadequacies of a study should be considered as going to the weight of the evidence rather than its admissibility).

**3. Hearsay**

An out of court statement "offered in evidence to prove the truth of the matter asserted" is inadmissible hearsay unless otherwise provided for by the Rules or by the Supreme Court pursuant to statutory authority or by Act of Congress. Fed. R. Evid. 801, 802. Rule 803(6) creates the business record exception

to the hearsay rule, admitting the following records of regularly conducted activity:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Fed. R. Evid. 803(6).

Leiserv argues that the BRC Study should be excluded because it summarizes inadmissible hearsay statements made by injured parties in incident reports, and maintains that the business record exception of Rule 803(6) does not apply because the circumstances of the reports' preparation indicate a lack of trustworthiness. Mot. (doc. # 51) at 4-6. In particular, Leiserv states that (1) the injured patrons were under no duty to report the facts accurately, (2) the employees taking their statements were not obligated to verify the facts, and (3) the reports were not generated in the ordinary course of business. Id.

To the extent that the Study summarizes the frequency with which incidents were reported in different locations within the Brunswick bowling centers, the Court does not share Leiserv's concern regarding the trustworthiness of the underlying reports. The potential danger that some patrons or employees may have inaccurately recorded the facts, whether intentionally or not, is slight in view of the fact that the Study relies only upon the accuracy of the reported location of the incidents. Indeed, the fact that Brunswick compiled these portions of the reports to

- 6 -

1 create an internal manual on safety is further indicia of their
2 reliability.  Finally, the fact that accidents, by their nature, do
3 not occur in the ordinary course of business for a bowling center,
4 does not mean that documentation of their occurrence is not a
5 regular activity.  Accordingly, the Court finds that the
6 circumstances of the reports' preparation indicate sufficient
7 trustworthiness so that those portions of the underlying reports
8 summarized in the Study would be admissible.
9      For the foregoing reasons, Leiserv's motion <u>in limine</u> to
10 exclude the BRC Study (doc. # 51) is granted in part and denied in
11 part.  Plaintiff may not present evidence of or make any reference
12 to (1) the second sentence of the first paragraph of the first page
13 of the Study; (2) the second sentence of the first paragraph of the
14 second page of the Study; or (3) the entire final paragraph of the
15 second page of the Study.  Plaintiff may present the remaining
16 portions of the first page of the Study, captioned "Accident
17 Prevention," only for the purpose of showing that Leiserv had
18 notice of the frequency with which falls were reported to occur in
19 the approach area to the lanes at Brunswick bowling centers; and
20 may present the remaining portions of the second page of the Study,
21 captioned "Slips/Trips/Falls on Approaches," only for the purpose
22 of showing that Leiserv was aware of the effect of approach finish
23 in maintaining desired slide conditions.  Finally, Plaintiff's
24 introduction of the Study into evidence for these purposes will be
25 subject to the Court's issuance of a limiting instruction advising
26 the jury to take into consideration the fact that the Study was
27 conducted and published approximately thirty years ago.
28 . . .

**C. Evidence of Plaintiff's Medical Expenses**

Finally, Leiserv argues that Plaintiff's evidence of medical expenses should be limited only to the amounts actually paid by him or his insurer, to the exclusion of any discounts obtained through his insurer's negotiations with his health care providers. See Response (doc. # 53) at 7; Mot. (doc. # 52), Ex. 1. Plaintiff maintains that the collateral source rule precludes any reduction of his claimed medical expenses by the amount of these write-offs. Response (doc. # 53) at 4. For the reasons below, the Court finds that Plaintiff, through compensatory damages, should not be entitled to recover a greater amount than he, or his insurer, have actually paid or may remain legally liable, and rejects Plaintiff's argument that the collateral source rule requires otherwise.

Arizona follows the common law collateral source rule, which provides that "[p]ayments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable."[1] Restatement (Second) of Torts § 902(2) (1979); see also Taylor v. S. Pac. Transp. Co., 130 Ariz. 516, 637 P.2d 726, 729-30 (1981). The Arizona Supreme Court has stated that the purpose of the rule is "to avoid a windfall to the tortfeasor, if a choice must be made between him and the

---

[1] Because this is a diversity case arising from alleged negligence occurring in Arizona, the Court must apply Arizona substantive law. Erie R.R. v. Tompkins, 304 U.S. 64, 78-79 (1938). Although the collateral source doctrine functions as an evidentiary rule, it is closely tied to state substantive policy in Arizona. See Eastin v. Broomfield, 116 Ariz. 576, 570 P.2d 744, 752 (1977) (acknowledging legislature's right to abolish the collateral source rule in medical malpractice cases as a matter of public policy).

injured party." Michael v. Cole, 122 Ariz. 450, 595 P.2d 995, 997 (1979). However, Arizona law is equally strong in its admonishment that compensatory damages are not intended to confer a windfall on the plaintiff. See, e.g., Brown v. Valley Nat'l Bank of Ariz., 26 Ariz. App. 538, 549 P.2d 1056, 1057 (Ct. App. 1976) (". . . [A] plaintiff is entitled to be made whole and nothing more, and cannot be allowed to be compensated in excess of the damages he has suffered."). Some courts have balanced these competing interests by allowing the plaintiff to introduce evidence of amounts paid by a collateral source such as an insurer, but disallowing evidence of write-offs that no one incurred. See, e.g., Mitchell v. Hayes, 72 F. Supp. 2d 635, 637-38 (W.D. Va. 1999) (precluding plaintiff from referring to or introducing evidence at trial of any amount of medical bills that represented write-offs); Ward-Conde' v. Smith, 19 F. Supp. 2d 539, 541-42 (E.D. Va. 1998).

Plaintiff fails to cite any authority in which the collateral source rule has allowed a recovery in excess of amounts actually paid by either a plaintiff or a collateral source. Three of the cases cited by Plaintiff do not even invoke the collateral source rule, and instead, reach their results based on the courts' interpretation of contract language in insurance policies.

In Coconino County v. Fund Adm'rs Ass'n, 149 Ariz. 427, 719 P.2d 693, 696 (Ct. App. 1986), the Arizona Court of Appeals interpreted the meaning of the phrase "expenses actually incurred" in a medical insurance policy. In that case, the insured was eligible for county medical assistance, and so, his health care providers directly billed the county medical assistance program. Id. The court held that, although he was not directly billed, the

insured had "actually incurred" his hospitalization expenses as defined in his insurance policy, because the providers would have held him liable in the event that the county did not pay. Id.

In Nahom v. Blue Cross & Blue Shield of Ariz., 180 Ariz. 548, 885 P.2d 1113, 1119-20 (Ct. App. 1994), the Arizona Court of Appeals addressed the situation where two or more insurance policies cover the same loss without providing for coordination of benefits.[2] The court held that in those unique circumstances, each insurer was required to pay all of the insured's qualifying medical expenses under their respective policies, even if the insured would receive payment in excess of the hospital's actual charges. Id. at 1119. Any perceived windfall to the insured was attributable solely to contract principles, and had nothing to do with the collateral source rule from tort law, which is at issue in this case.

Likewise, in Samsel v. Allstate Ins. Co., 204 Ariz. 1, 59 P.3d 281, 289-90 (2002), the Arizona Supreme Court determined that the plaintiff was entitled to recovery under the medical payments provision of her automobile policy for amounts already paid by her HMO. Like Nahom, the outcome of the case turned on the insurer's failure to include a coordination of benefits clause in its policy with respect to the medical payments coverage. Id. at 289-91. It in no way represented a novel extension of the collateral source rule, or the basic principles of compensatory damages.

---

[2] A coordination of benefits clause in an insurance contract would prevent the total payout to an insured from exceeding the total amount of medical bills resulting from a covered loss. See Nahom, 885 P.2d at 1116.

Accordingly, the Court finds that the collateral source rule is best honored by permitting Plaintiff to recover amounts paid by him or his insurer, but barring recovery of any amount of discounts or write-offs which neither Plaintiff nor his insurer incurred. However, the Court is circumspect with respect to the practical difficulties of presenting evidence of medical expenses sterilized of any reference to these non-recoverable amounts. Therefore, Leiserv's motion <u>in limine</u> (doc. # 52) is granted so that Plaintiff may, at his option, (1) present evidence <u>only</u> of the amounts actually paid by him or his insurer, and such portions for which he may remain legally liable, subject to a limiting instruction[3] to the jury that Plaintiff may recover no more than the amounts actually paid by him or his insurer, and such portions for which he may remain legally liable; or (2) present evidence of his medical expenses in any other manner stipulated by the parties and consistent with this order.

**III. CONCLUSION**

In light of the forgoing analysis,

IT IS ORDERED that Defendant's motion <u>in limine</u> to exclude unrelated prior incidents (doc. # 50) is GRANTED.

IT IS FURTHER ORDERED that Defendant's motion <u>in limine</u> to exclude the BRC Study (doc. # 51) is GRANTED in part and DENIED in part. Plaintiff may not present evidence of or make any reference to (1) the second sentence of the first paragraph of the first page

---

[3] The parties shall have until the close of the first day of trial to submit proposed limiting instructions contemplated by Parts II.B and II.C of this order with respect to Leiserv's motions <u>in limine</u> (doc. ## 51-52).

- 11 -

of the Study; (2) the second sentence of the first paragraph of the second page of the Study; or (3) the entire final paragraph of the second page of the Study.  Plaintiff may present the remaining portions of the first page of the Study for the purpose of showing that Defendant had notice of the frequency with which falls were reported to occur in the approach area to the lanes at Brunswick bowling centers; and may present the remaining portions of the second page of the Study for the purpose of showing that Defendant had notice of the effect of approach finish in maintaining desired slide conditions.  Plaintiff's introduction of the Study for these purposes will be subject to the Court's issuance of a limiting instruction advising the jury to take into consideration the fact that the Study was conducted and published approximately thirty years ago.

　　　IT IS FURTHER ORDERED that Defendant's motion <u>in limine</u> to limit Plaintiff's evidence of medical expenses to amounts actually accepted as payment in full for the services rendered by medical providers (doc. # 52) is GRANTED.  Plaintiff may, at his option, (1) present evidence only of the amounts actually paid by him or his insurer, and such portions for which he may remain legally liable, subject to a limiting instruction to the jury that Plaintiff may recover no more than the amounts actually paid by him or his insurer, and such portions for which he may remain legally liable; or (2) present evidence of his medical expenses in any other manner stipulated by the parties and consistent with this order.

　　　IT IS FURTHER ORDERED that both parties shall have until the close of the first day of trial in which to submit proposed

1  limiting instructions contemplated by Parts II.B and II.C of this
2  order.
3       DATED this 1st day of December, 2005.

_____
Robert C. Broomfield
Senior United States District Judge

8  Copies to counsel of record